**APOLLO LAW LLC**
Adam W. Hansen (CA Bar No. 264241)
adam@apollo-law.com
Colin Reeves (*admission pro hac vice forthcoming*)
colin@apollo-law.com
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401
Phone: (612) 927-2969

**CASEY JONES LAW**
Nicholas D. Thompson (*admission pro hac vice forthcoming*)
nthompson@caseyjones.law
323 Washington Avenue North
Suite 200
Minneapolis, MN 55401
Phone: (757) 477-0991

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Andre Jackson,<br>Plaintiff,<br><br>vs.<br><br>Union Pacific Railroad Co.,<br>Defendant. | Case No.: 26-00352<br><br>**COMPLAINT**<br><br>**1. Violation of the Family and Medical Leave Act, 29 U.S.C. 2615**<br>**2. Violation of the California Family Rights Act, Gov. Code § 12945.2**<br>**3. Violation of the California Fair Employment and Housing Act, Gov. Code § 12940**<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1. This complaint is about an employer, Defendant Union Pacific Railroad Co., that systematically deprives its employees of the leave they are entitled to under the Family Medical Leave Act ("FMLA"), California Family Rights Act ("CFRA"), and the California Fair Employment and Housing Act ("FEHA"). Union Pacific (1) grossly miscalculates the amount of FMLA and CFRA leave taken by and available to employees, depriving them of their right to take 12 workweeks of leave under the FMLA and CFRA; and (2), after wrongly denying employees FMLA/CFRA leave, fails to engage employees who take such leave because of a serious health condition that also constitutes a disability under the FEHA in the interactive process mandated by the FEHA to determine whether permitting them to take additional leave would be a reasonable accommodation under the FEHA.

2. Plaintiff Andre Jackson is one of many Union Pacific employees in California whose rights have been violated because of Union Pacific's unlawful policies. Union Pacific (1) drastically miscalculated how much FMLA/CFRA leave Jackson was entitled to and used; (2) wrongly denied his requests for leave under the FMLA and CFRA; and (3) failed to grant him additional leave as a reasonable accommodation and failed to engage him in an interactive process to determine whether permitting him to take such leave would be a reasonable accommodation.

3. Jackson files this complaint to hold Union Pacific accountable for its unlawful conduct.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over Jackson's FMLA claims under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Jackson's California state-law claims under 28 U.S.C. § 1367(a) because Jackson's state-law claims are so related to his FMLA claims that they form part of the same case or controversy.

5. Venue is proper under 28 U.S.C. § 1391 because the unlawful conduct occurred in this district.

## LEGAL PRINCIPLES

***The CFRA and the FMLA***

6. The CFRA and the FMLA grant eligible employees the right to take up to 12 workweeks of leave a year to care for sick family members, bond with newborn children, and tend to their own serious medical conditions. Gov. Code § 12945.2(a); 29 U.S.C. § 2612(a)(1). The CFRA and FMLA prohibit employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of, or the attempt to exercise, any right provided [by the CFRA or the FMLA]." Gov. Code § 12945.2(q); 29 U.S.C. § 2615(a)(1). The CFRA and FMLA also prohibit employers from "refus[ing] to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual because of" the "individual's exercise of the right to family care and medical leave provided" by the CFRA or the FMLA. Gov. Code § 12945.2(k)(1); 29 U.S.C. § 2615(a)(2). Employers also may not use the taking of CFRA or FMLA leave as a negative factor in employment actions. Cal. Code Regs. Tit. 2, § 11094(b); 29 C.F.R. § 825.220(c). An employee who takes CFRA or FMLA leave is entitled to be reinstated to the same or to a comparable position that is equivalent or virtually identical to the employee's former position. Cal. Code Regs. Tit. 2, § 11089(b); 29 C.F.R. §§ 825.214–15. "An employee is entitled to reinstatement even if the employee has been replaced or the employee's position has been restructured to accommodate the employee's absence." Cal. Code Regs. Tit. 2, § 11089(a)(2)(A); 29 C.F.R. § 825.214.

7. The CFRA directs the California Civil Rights Department and Civil Rights Council to issue regulations governing the CFRA. *E.g.*, Gov. Code § 12945.2(a), (r)(3). Those regulations and the CFRA itself make clear that the CFRA and the FMLA are meant to largely parallel one another. *See*

*Richey v. AutoNation, Inc.*, 60 Cal. 4th 909, 919 (Cal. 2015) ("The CFRA was enacted in 1991 as a state counterpart to the FMLA.").

8. The CFRA's regulations explicitly incorporate by reference the federal regulations interpreting the FMLA, to the extent that the federal regulations are not inconsistent with California law. Cal Code Regs. Tit. 2, § 11096 ("To the extent that they are within the scope of Government Code section 12945.2 and not inconsistent with this article, other state law, or the California Constitution, the [Civil Rights] Council incorporates by reference the federal regulations interpreting FMLA that became effective March 8, 2013 (29 C.F.R. Part 825), which govern any FMLA leave that is also a leave under this article."); *id.* § 11087 (providing that the FMLA's definitional regulations "shall also apply to [the CFRA's definitional regulations], to the extent [the FMLA's regulations] are not inconsistent with" the CFRA's regulations).

9. The CFRA and the FMLA provide employees with largely the same rights and protections. Each statute enables eligible employees to take up to 12 workweeks of leave during any 12-month period for family care or medical reasons. Gov. Code § 12945.2(a); 29 U.S.C. § 2612(a)(1). Leave taken under the CFRA generally runs concurrently with leave taken under the FMLA. Gov. Code § 12945.2(p). To be eligible for leave under the CFRA or the FMLA, an employee must have been employed by the employer for at least 12 months and have worked at least 1,250 hours for the employer during the previous 12-month period. *Id.* § 12945.2(a); Cal. Code Regs. Tit. 2, § 11087(g) (defining eligible employee); 29 C.F.R. § 825.102 (same). Eligible employees may take leave in continuous blocks of time or on an intermittent basis. Cal. Code Regs. Tit. 2, § 11090(a), (e); 29 C.F.R. §§ 825.200(a), 202(a).

10. The CFRA and FMLA provide employers with four ways of defining the relevant 12-month leave period. The 12-month leave period may be based on (1) the calendar year; (2) any fixed 12-month period; (3) a 12-month period measured forward from the first date an employee takes FMLA or

CFRA leave; or (4) a rolling 12-month period measured backward from the date an employee takes FMLA or CFRA leave. 29 C.F.R. § 825.200(b); Cal. Code Regs. Tit. 2, § 11090(b).

11. The CFRA and the FMLA provide the same guidelines for calculating how much leave an employee is entitled to and how much of his allotted leave he has used.

12. Eligible employees are entitled to take 12 workweeks of leave. Gov. Code § 12945.2(a); 29 U.S.C. § 2612(a)(1). "'Twelve workweeks'…means the equivalent of 12 of the employee's normally scheduled workweeks." Cal. Code Regs. Tit. 2, § 11090(c); 29 C.F.R. § 825.205(b)-(c). "If an employee's schedule varies from week to week to such an extent that an employer is unable to determine with any certainty how many hours the employee would otherwise have worked (but for the taking of CFRA [or FMLA] leave), a weekly average of the hours scheduled over the 12 months prior to the beginning of the leave period (including any hours for which the employee took leave of any type) shall be used for calculating the employee's leave entitlement." Cal. Code Regs. Tit. 2, § 11090(c); 29 C.F.R. § 825.205(b)(3). In other words, when determining how much CFRA or FMLA leave an eligible employee who works a variable and irregular schedule is entitled to, an employer must base the employee's leave entitlement on two things: (1) the amount of time that the employee worked in the previous year *and* (2) the amount of work time the employee missed because of leave taken of any type during that period.

13. The CFRA and FMLA also instruct employers how to calculate how much CFRA and FMLA leave an employee uses—i.e., the amount of time to deduct from that employee's total CFRA-leave allotment or FMLA-leave allotment when he takes leave. Employers may not require employees to take more CFRA or FMLA leave than necessary, and they must allow employees to use FMLA/CFRA leave in the smallest increment of time the employer allows for other forms of leave—such as vacation leave—so long as that increment is no longer than one hour. Cal. Code Regs. Tit. 2, § 11090(e); 29 C.F.R.

§ 825.205(a). Employers must also count employees as using an amount of FMLA/CFRA leave in direct proportion to the amount of work they miss because of leave in each workweek—with each employee's standard or average workweek providing the baseline to measure this. Cal. Code Regs. Tit. 2, *Id.* § 11090(c); 29 C.F.R. § 825.205(b)(1), (c). Time that an employee is not scheduled to report for work may not be counted as CFRA or FMLA leave. 60 Fed. Reg. 2180, 2203, 2229 (Jan. 6, 1995). "[O]nly the amount of leave actually taken may be counted toward the 12 weeks of leave to which the employee is entitled." Cal. Code Regs. Tit. 2, § 11090(c)(2); 29 C.F.R. § 825.205(b)(1). When an employee who works variable hours takes CFRA or FMLA leave, the amount of leave that employee takes may be calculated either as a fraction of that employee's workweek or as its hourly equivalent. 29 C.F.R. § 825.205(b)(1).

***The CFRA, FEHA, and the Americans with Disabilities Act***

14. The FEHA, like its federal counterpart, the Americans with Disabilities Act ("ADA"), requires employers to provide disabled employees with reasonable accommodations. Gov. Code § 12940(a), (m)-(n); 42 U.S.C. § 12112(b)(5). The ADA and FEHA both require employers to engage in an interactive process to determine an appropriate reasonable accommodation. 29 C.F.R. § 1630(o)(3); Gov. Code § 12940(n). The California Legislature has long "affirm[ed] the importance of the interactive process between the…employee and the employer in determining a reasonable accommodation." Gov. Code § 12926.1(e). Leave from work may be a reasonable accommodation. 29 C.F.R. § 825.702(b); Cal. Code Regs. Tit. 2, § 11093(e).

15. But the FEHA's protections for disabled workers are broader than those provided by the ADA. "The law of this state in the area of disabilities provides protections independent from those in the [ADA]. Although the federal act provides a floor of protection, this state's law has always, even prior to the passage of the federal law, afforded additional protections." Gov. Code § 12926.1(a). California law

accordingly "contains broad definitions of physical disability, mental disability, and medical condition." *Id*. § 12926.1(b); *see id.* § 12926(j), (m). "Physical and mental disabilities include, but are not limited to, chronic or episodic conditions such as HIV/AIDS, hepatitis, epilepsy, seizure disorder, diabetes, clinical depression, bipolar disorder, multiple sclerosis, and heart disease. In addition, the Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the law of this state require a 'limitation' upon a major life activity, but do not require, as does the federal Americans with Disabilities Act of 1990, a 'substantial limitation.' This distinction is intended to result in broader coverage under the law of this state than under that federal act." *Id.* § 12926.1(c). In addition, "if the definition of 'disability' used in the [ADA] would result in broader protection of the civil rights of individuals with a mental disability or physical disability…, or would include any medical condition not included within [the] definitions [of 'physical disability' and 'mental disability' in the California Government Code], then that broader protection or coverage shall be deemed incorporated by reference into, and shall prevail over conflicting provisions of, the definitions in [the Government Code]." *Id.* § 12926(n).

16. The FEHA and CFRA provide overlapping protections for employees with disabilities and serious health conditions. *See* Cal. Code Regs. Tit. 2, § 11089(b)(2); *see also* 29 C.F.R. § 825.702 (explaining the interaction between the FMLA and ADA). Crucially, "[i]f an employee has a serious health condition [under the CFRA] that also constitutes a disability as defined by Government Code section 12926 and cannot return to work at the conclusion of the employee's CFRA leave, the employer has an obligation to engage that employee in an interactive process to determine whether an extension of that leave would constitute a reasonable accommodation under the FEHA." Cal. Code Regs. Tit. 2, § 11093(e).

## PARTIES

17. Plaintiff Andre Jackson has worked for Union Pacific as a thru-freight conductor since August 2022. He resides in the City of Shasta Lake, California. He works out of Union Pacific's Dunsmuir, California station.

18. Defendant Union Pacific is one of six Class I railroads—the largest freight rail operators in the United States. Union Pacific is headquartered in Omaha, Nebraska. Union Pacific provides freight rail transportation services across much of the western two-thirds of the United States, including in California.

19. Union Pacific is a covered employer under the CFRA and FEHA, as it has more than 5 employees in California. It is also a covered employer under the FMLA, as it engages in commerce or in an industry affecting commerce and employs far more than 50 employees.

## FACTUAL ALLEGATIONS

### UNION PACIFIC'S ON-CALL WORK SYSTEM

20. Union Pacific calls employees who work as conductors and engineers, and in other similar positions, "Train, Engine, and Yard" ("TE&Y") employees.

21. Union Pacific operates 24 hours a day, 7 days a week, 365 days a year. Union Pacific's TE&Y employees typically work on an on-call basis. That means TE&Y employees may be called to perform work at any time of day (or night) on any day of the year. Their schedules and the number of hours that they work each week therefore vary depending on when and what work they are called to perform.

22. Union Pacific uses a crew management software system to staff its trains and railyards. Broadly speaking, within the crew management system, TE&Y employees are either "marked up"—meaning they are available for work—or "marked off"—meaning they are unavailable for work.

23. An employee who is marked up is placed on a list of marked-up employees. Some lists are called "pool boards." Employees assigned to pool boards typically take a train on a predetermined route—for example, from Dunsmuir, California to Klamath Falls, Oregon, and then back again. Some lists are called "extra boards." Employees assigned to extra boards work on various routes on an as-needed basis. But the process for assigning work is the same for both kinds of boards. As work becomes available, the employee who is marked up and at the top of the list receives a notification from Union Pacific that he is to report to work. These notifications can come at any time: during the day or night; during the week, on weekends, or on holidays. When employees receive these notifications, they must report for duty. Failing to do so can lead to discipline and termination.

24. Employees mark off (or in railroad jargon, "lay off"), making them unavailable for work, for a variety of reasons. To lay off, an employee typically does so through Union Pacific's online crew management system or by calling a crew-management employee. Union Pacific tracks the reason for the layoff through a system of codes. Some common codes include "LS" (layoff sick), "LV" (vacation), and "MLOA" (medical leave of absence).

25. TE&Y employees may also mark off to take FMLA or CFRA leave, if eligible to do so. FMLA and CFRA leave comes in many shapes and sizes. Employees mark off for anticipated events, like the birth or adoption of a child or a planned medical procedure. Some employees mark off intermittently—for example, when they need regular medical treatment or experience an acute period of illness from a pre-existing condition. And of course, employees take FMLA or CFRA leave from time to time to deal with unanticipated medical emergencies.

## UNION PACIFIC MAINTAINS A POINTS-BASED ATTENDANCE AND DISCIPLINARY POLICY

26. Union Pacific's TE&Y employees are expected to protect their job assignments on a full-time basis—meaning that Union Pacific expects employees to be marked up and ready to work more or less continuously.

27. Union Pacific maintains a points-based attendance and disciplinary policy for TE&Y employees. This complaint requires a basic understanding of the policy that was in effect from September 8, 2023 to June 30, 2024.

28. Under that policy, employees were assigned 7 to 15 points for certain kinds of layoffs, such as taking unpaid sick leave. Points age off an employee's record after 91 days.

29. If an employee accumulates 28 or more points within a 90-day period, the employee faces investigation and discipline for violating the attendance policy. When an employee accrues 28 or more points for the first time, he is charged with and assessed a First Offense. That offense remains on the employee's record for a retention period of either two or three years, depending on whether the employee waives his right to a formal investigation by Union Pacific.

30. After an employee is charged with a First Offense, his point total resets to zero and he begins accruing points again if he misses work. If an employee accumulates 28 or more points during the retention period for the First Offense, the employee is charged with a second violation of the attendance policy and removed from service pending an investigation. If that charge is substantiated, the employee is permanently dismissed from service with Union Pacific.

31. Union Pacific does not assess any points for approved medical leaves of absence.

32. Union Pacific also does not (and under the law, cannot) assess points against employees who lay off to use CFRA or FMLA leave.

33. But it's another story for employees who have supposedly exhausted their CFRA or FMLA leave and who need to mark off for periods that otherwise would be covered by the CFRA or FMLA. If they mark off as sick, take personal leave, or lay off for a family-related reason, they are assessed between 7 and 15 points under Union Pacific's attendance policy. The number of points depends on their job assignment and when they take the leave. Taking just two to four days of this kind of leave in any 90-day period can therefore lead to accumulating 28 or more points and violating Union Pacific's attendance policy, subjecting the employee to discipline and ultimately dismissal.

34. If an employee has been assessed points for an attendance infraction, he can reduce some of those points if he remains marked-up and fully available for service for 14 (or more) consecutive calendar-day "credit periods." Certain attendance statuses, such as paid leave and paid vacation, neither count towards nor reset the credit period. Not so for CFRA or FMLA leave: when an employee takes CFRA or FMLA leave, Union Pacific restarts the 14-day credit period, meaning that an employee who takes a day of CFRA or FMLA leave every two weeks can never reduce the points he has been assessed even if he is otherwise fully marked-up and ready to work during that period.

35. The Union Pacific attendance policy that went into effect on July 1, 2024 is very similar to the policy that was effective from September 8, 2023 to June 30, 2024. Each policy assigns employees points when an employee lays off for certain reasons, such as taking sick leave; subjects them to investigation, discipline, and termination if they accumulate 28 or more points for First and Second Offenses; and permits them to reduce the points they have accumulated during 14-day credit periods but not if they take FMLA or CFRA leave during such a period.

**UNION PACIFIC MISCALCULATES EMPLOYEES' FMLA/CFRA LEAVE ENTITLEMENT AND FMLA/CFRA LEAVE USAGE**

36. Union Pacific's TE&Y employees request FMLA and CFRA leave in either of two ways. One way to do so is through Union Pacific's internal online system. The other way to do so is by calling

a crew-management employee. Both the online system and the crew-management employee require the TE&Y employee to request how much leave they would like to take (e.g., 8 or 12 hours).

37. Union Pacific uses a rolling 12-month period measured backward from the date an employee takes leave to define the 12-month FMLA/CFRA leave period. This means that when an eligible employee takes FMLA or CFRA leave on November 1, 2025, his available leave is 12 workweeks less any FMLA or CFRA leave he used in the previous 12 months.

38. Union Pacific calculates TE&Y employees' 12-workweek FMLA/CFRA leave entitlement based exclusively on the number of hours of work that they performed in the past 12 months. Union Pacific divides this 12-month total by 52 to determine the employee's average workweek for purposes of calculating the employee's CFRA and FMLA leave entitlement.

39. Union Pacific does not include the amount of work time the employee missed because of leave taken in the previous 12 months when determining a TE&Y employee's average workweek for purposes of calculating the employee's CFRA and FMLA leave entitlement.

40. The amount of work time the employee missed because of leave an employee has taken in the past year is therefore not included when calculating the employee's CFRA and FMLA leave entitlement.

41. Union Pacific's failure to include work time missed because of leave taken violates the CFRA and FMLA because (as explained above) each law requires employers to factor in the amount of work time missed because of leave an employee has taken in the previous year when determining an employee's average workweek for purposes of calculating the employee's CFRA and FMLA leave entitlement.

42. Union Pacific's failure to include the amount of work time missed because of leave TE&Y employees have taken in the past year leads Union Pacific to undercount how much CFRA and FMLA leave these employees are entitled to.

43. An example illustrates this. Suppose an employee named Jim works 1,300 hours from September 1, 2024 to August 31, 2025. That is an average of 25 hours a week. Suppose as well that Jim missed 300 hours of additional work because he took leave of various types during that period. Jim's average workweek is therefore 30.77 hours (1,300 plus 300, divided by 52). But Union Pacific would count Jim as having an average workweek of only 25 hours, not 30.77 hours.

44. Union Pacific stores the amount of FMLA and CFRA leave it says an employee is entitled to in that employee's "FMLA Bank." The FMLA bank contains the amount of FMLA and CFRA leave that an employee can take in a rolling 12-month period. When an employee uses FMLA or CFRA leave, Union Pacific deducts the amount of leave taken from the employee's FMLA Bank.

45. But because Union Pacific *under*counts how much leave TE&Y employees are entitled to, it ends up *over*counting how much leave they use, violating the FMLA and CFRA in a second way.

46. Returning to the Jim example shows how this overcounting works. If Jim takes 8 hours of FMLA and CFRA leave, Union Pacific deducts .32 workweeks (8 hours/25 hours) from Jim's 12-workweek entitlement. But because Jim's average workweek was actually 30.77 hours (not 25 hours), he should have had only .26 workweeks (8 hours/30.77 hours) deducted from his entitlement. In effect, because Union Pacific *under*counts how much FMLA/CFRA leave Jim was entitled to in the first place, it *over*counts how much FMLA/CFRA leave he actually used.

47. Union Pacific overcounts the amount of CFRA and FMLA leave TE&Y employees take in other ways as well. Recall that employers may not require employees who need FMLA or CFRA leave to take more FMLA/CFRA leave than necessary. Cal. Code Regs. Tit. 2, § 11090(e); 29 C.F.R.

§ 825.205(a). Union Pacific does not comply with this rule. Union Pacific does not allow employees to take FMLA/CFRA leave in increments of one hour or less, and it requires employees to take more FMLA/CFRA leave than is necessary, charging them with haven taken more CFRA/FMLA leave than they requested or wanted to take.

48. Union Pacific drastically overcounts the amount of CFRA and FMLA leave TE&Y employees take in in yet another way. When a TE&Y employee takes FMLA/CFRA leave during a period when he would have been called to work had he remained marked up for full-duty, Union Pacific counts the entire duration of the trip that he would have taken as FMLA/CFRA leave—even if he requested only a few hours of leave or was ready to work before the trip was complete. Union Pacific does this by counting *the total amount of working time that it takes for any train the employee missed to complete a round-trip voyage*—a trip that can last multiple days—*as time off on FMLA/CFRA leave*. This remains true even if the amount of the leave that the employee requested has ended, the employee would like to return to work, and other trains are available for him to work on. Rather than permit employees to return to their position or to an equivalent or comparable position, Union Pacific continues to hold employees out of work and count their time off work as FMLA/CFRA leave.

49. Union Pacific's refusal to reinstate employees to their position or to an equivalent one causes them to work fewer shifts and hours and to therefore lose wages. And because Union Pacific calculates their FMLA/CFRA leave entitlement exclusively based on the number of hours that they work, Union Pacific's policy of not timely reinstating employees to their position or to an equivalent one causes employees who use FMLA/CFRA leave to have fewer hours of FMLA/CFRA leave available to them.

50. An example helps to understand these points. Suppose a conductor requests 8 hours of FMLA/CFRA leave beginning at 9:00 a.m. on May 1. If, based on his board position, he would have been called to drive a train at 12:00 p.m. that day, and if that outgoing trip takes 10 hours (i.e., until 10:00

p.m.), then he will be charged with having taken 10 hours of FMLA and CFRA leave, even if he was ready to return to work at 5:00 p.m.

51. If the outgoing trip ends at a terminal that is not the conductor's home terminal, then the conductor will *remain* on FMLA and CFRA leave and be charged with having taken such leave for the amount of work time that it takes the crew to return to the conductor's home terminal on a separate train on May 2 or May 3. In other words, Union Pacific counts the conductor as having taken an amount of leave equivalent to the length of work time it took for *another employee* to complete both legs of the trip. On top of this, Union Pacific will not reinstate the conductor to his position or to an equivalent one until the other employee completes those trips, causing the conductor to work fewer shifts and hours, to lose wages, and have less FMLA/CFRA leave available to him.

52. Union Pacific's policy of calculating employees' use of FMLA/CFRA leave by reference to the total round-trip train hours they mark off for that leave does not comply with the FMLA or the CFRA.

**UNION PACIFIC FAILS TO ENGAGE EMPLOYEES WHO EXHAUST THEIR CFRA LEAVE IN AN INTERACTIVE PROCESS AND FAILS TO PROVIDE THEM WITH A REASONABLE ACCOMMODATION**

53. Union Pacific does not engage employees who take CFRA leave for a serious health condition that also constitutes a disability under the FEHA and who cannot return to work when they have exhausted the leave they are entitled to under the CFRA in an interactive process to determine whether an extension of that leave would constitute a reasonable accommodation under the FEHA. Union Pacific instead tells them that they have exhausted their leave and refuses to grant them additional protected leave.

**UNION PACIFIC'S ACTIONS VIOLATE THE CFRA, FMLA, AND FEHA**

54. Union Pacific's violations of the CFRA, FMLA, and FEHA are willful and ongoing. Union Pacific committed these violations with reckless or deliberate disregard for Jackson's (and other employees') rights. Jackson and other employees have pointed out the illegalities in Union Pacific's FMLA/CFRA calculation methodology. Yet Union Pacific refuses to change course. It persists in its unlawful ways because it has a strong incentive to miscalculate employees' leave, not accommodate them by permitting additional leave, and get rid of employees who use FMLA/CFRA leave.

55. The human costs of Union Pacific's misconduct are incalculable. Union Pacific has shortchanged employees needing urgent medical care; parents and spouses seeking to care for their family members; and employees who now must work despite their serious health conditions or risk losing their livelihoods.

56. This is not what the California State Legislature had in mind when it granted up to 12 workweeks of protected medical and family leave, required employers to engage in an interactive process to determine whether extending that leave would be a reasonable accommodation, and forbid employers from interfering with employees' use of their protected leave. Nor is it what Congress had in mind when providing similar protections through the FMLA.

**UNION PACIFIC MISCALCULATES ANDRE JACKSON'S FMLA/CFRA LEAVE, DENIES HIM LEAVE THAT HE IS ENTITLED TO, FAILS TO ENGAGE HIM IN AN INTERACTIVE PROCESS, AND FAILS TO REASONABLY ACCOMMODATE HIM**

57. Jackson began working for Union Pacific as a conductor in August 2022. As a conductor, he is a TE&Y employee. His home station is Dunsmuir, California. Both pool-board and extra-board employees work out of Union Pacific's Dunsmuir location.

58. Jackson is a pool-board employee. He works a set route that runs from Dunsmuir to Klamath Falls, Oregon, and then back again to Dunsmuir. That route involves two days of work: one day

from Dunsmuir to Klamath Falls and another day back. Jackson sometimes must spend an extra day or two in Klamath Falls waiting for a train and doing no work before making the return trip to Dunsmuir.

59. Jackson works an on-call schedule. He is assigned a slot on the pool board. When that slot is at the top of the board, he is called to work. That can happen at any time of the day on any day of the year.

60. Jackson was diagnosed with anxiety in June 2023. His symptoms include muscle tension, which causes Jackson to suffer debilitating migraines. His symptoms also include excessive worry, fatigue, and difficulty with concentration. When present, his symptoms interfere with his ability to perform his job duties. Jackson's doctor prescribed him anxiety medication and began having bi-monthly appointments with him.

61. Jackson applied for FMLA/CFRA leave because of his anxiety in August 2023. Union Pacific approved him to take intermittent FMLA/CFRA leave later that month.

62. Jackson took FMLA/CFRA leave for the first time on August 31, 2023. Jackson used FMLA/CFRA leave intermittently over the next several months when his anxiety symptoms flared up or when he had medical appointments.

63. Union Pacific miscalculated Jackson's FMLA/CFRA leave entitlement and leave usage, both *over*counting how much leave he used and *under*counting how much leave he had left.

64. In addition to taking FMLA/CFRA leave, Jackson also took other kinds of leave in 2022, 2023, and 2024, including vacation, medical leave, and personal leave.

65. Union Pacific did not count the hours of work Jackson missed because of the leave he had taken when determining Jackson's FMLA/CFRA leave entitlement.

66. Union Pacific instead counted only the hours Jackson worked when calculating his average workweek and FMLA/CFRA leave entitlement.

67. Union Pacific's failure to count the work time Jackson missed because of the leave he had taken towards his FMLA/CFRA leave entitlement led it to undercount what Jackson's average workweek was and thus how much FMLA/CFRA leave he was entitled to.

68. When Jackson first took FMLA/CFRA leave on August 31, 2023, Union Pacific calculated his average workweek to be 35.325 hours.

69. As Jackson took FMLA/CFRA leave over the next several months, his average workweek (based exclusively on the hours he had worked in the past 12 months) dropped steadily, all the way down to 27.281 hours.

70. Had Union Pacific included the work time Jackson missed because of the leave he had taken when calculating his FMLA/CFRA leave entitlement, Jackson would have had substantially more FMLA/CFRA leave to take—i.e., his average workweek would have been higher than 27.281 hours and thus his FMLA/CFRA leave entitlement would have been larger.

71. Union Pacific's failure to include the work time Jackson missed because of the leave he had taken when calculating his FMLA/CFRA leave entitlement also led it to overcount how much FMLA/CFRA leave Jackson used.

72. Take, for example, the 7.5 hours of FMLA/CFRA leave that Union Pacific says Jackson used on March 16, 2024. By that point, Union Pacific calculated Jackson's average workweek to be 28.109 hours. It therefore assessed him with having taken .267 workweeks of FMLA/CFRA leave (7.5 divided by 28.109 = .267). But had Union Pacific properly included the work hours that Jackson missed because of the leave he had taken when determining Jackson's average workweek, his average workweek would have been higher than 28.109 hours. The 7.5 hours of FMLA/CFRA leave that Union Pacific says Jackson used on March 16, 2024 would therefore have counted (and should have counted) as a smaller

portion of a workweek of FMLA/CFRA leave than the .267 workweeks of leave that Union Pacific assessed Jackson with having taken.

73. For instance, assume that Jackson's average workweek—when including the hours he actually worked *and* the work hours that he missed because of the leave he had taken—was actually 35 hours. The 7.5 hours of FMLA/CFRA leave Union Pacific says that Jackson took on March 16, 2024 would therefore have counted as only .214 workweeks of FMLA/CFRA leave, not .267 workweeks (7.5 divided by 35 = .214).

74. Failing to include work time missed because of leave Jackson had taken when calculating his FMLA/CFRA leave entitlement therefore led Union Pacific to undercount the amount of FMLA/CFRA leave Jackson had available *and* the amount of FMLA/CFRA leave he used, leaving him with significantly less than the 12 workweeks of FMLA/CFRA leave he was entitled to.

75. Union Pacific overcounted the amount of FMLA/CFRA leave that Jackson used in additional ways. Union Pacific required Jackson to take more FMLA/CFRA leave than was necessary, charging him with haven taken more FMLA/CFRA leave than he requested or wanted to take.

76. Union Pacific also wrongly counted Jackson as taking FMLA/CFRA leave in an amount equivalent to the total amount of time that *another employee* spent on working on a round-trip voyage on a train (or trains) that Jackson would have worked on had he not taken FMLA/CFRA leave.

77. Here's what this means. If Jackson was on FMLA/CFRA leave when he would have been called to take a train from Dunsmuir to Klamath Falls, then Union Pacific counted him as using FMLA/CFRA leave in an amount equivalent to the amount of time an extra-board employee who replaced Jackson worked while taking the trip from Dunsmuir to Klamath Falls *and* the return trip a day or two later from Klamath Falls to Dunsmuir. So, for instance, if an extra-board employee worked 8 hours each way, Union Pacific assessed Jackson with having taken 16 hours of FMLA/CFRA leave. And here's the

important point: Union Pacific did this *even if* Jackson was ready and wanted to come back to work before the return train from Klamath Falls reached Dunsmuir, *even if* there were other trains for him to work on or other work that he could have done, and *even if* he requested fewer hours of FMLA/CFRA leave than Union Pacific charged him with having taken.

78. Union Pacific did not reinstate Jackson to his position or to a comparable or equivalent position during these periods, causing him to work fewer shifts and hours, to lose wages, and to have less FMLA/CFRA leave available leave to him.

79. Union Pacific's miscalculations of Jackson's FMLA/CFRA leave entitlement and usage rapidly depleted the amount of FMLA/CFRA leave he had available.

80. Jackson requested FMLA/CFRA leave on March 3, 2024. Union Pacific wrongly denied Jackson's request to take FMLA/CFRA leave on the ground that he had exceeded the 12 workweeks of leave he was entitled to—that, in other words, Jackson's FMLA Bank was empty because he had exhausted his leave.

81. Union Pacific did not accommodate Jackson by allowing him to take additional intermittent leave as a reasonable accommodation after Union Pacific denied his March 3, 2024 FMLA/CFRA leave request. Nor did Union Pacific engage Jackson in an interactive process to determine whether allowing him to take additional leave would be a reasonable accommodation. Permitting Jackson to take additional leave would have been a reasonable accommodation.

82. Because Union Pacific denied Jackson's March 3, 2024 request to use FMLA/CFRA leave and because Union Pacific did not permit him to take additional leave as a reasonable accommodation, Jackson was forced to use a day of personal leave to be able to lay off from work. He would not have used personal leave had Union Pacific not denied his FMLA/CFRA leave request or had Union Pacific accommodated him by granting him additional leave.

83. Jackson complained to Union Pacific about its miscalculation of his FMLA/CFRA leave entitlement and usage and its wrongful denial of his March 3, 2024 leave request. Union Pacific *admitted* that it had miscalculated Jackson's FMLA/CFRA leave and wrongly denied him FMLA/CFRA leave.

84. On or about March 4, 2024, Jackson spoke with Wes Dooley, Union Pacific's Manager of Leave Management, about his FMLA/CFRA leave. Jackson objected to Union Pacific's miscalculation of Jackson's FMLA/CFRA leave entitlement and usage and its wrongful denial of his leave request. Dooley admitted that Union Pacific had miscalculated Jackson's FMLA/CFRA leave, and that Jackson had *not* exhausted his FMLA/CFRA leave. Dooley told Jackson that he had more than one workweek of FMLA/CFRA leave left to use.

85. After his conversation with Dooley, Jackson used FMLA/CFRA leave on an intermittent basis in March and April 2024.

86. But Union Pacific wrongly denied another FMLA/CFRA leave request that Jackson made on April 10, 2024. Union Pacific denied Jackson's leave request on the same ground as before: that he had exhausted the 12 workweeks of leave he was entitled to.

87. Union Pacific did not accommodate Jackson by allowing him to take additional intermittent leave as a reasonable accommodation after Union Pacific denied his April 10, 2024 FMLA/CFRA leave request. Nor did Union Pacific engage Jackson in an interactive process to determine whether allowing him to take additional leave would be a reasonable accommodation. Permitting Jackson to take additional leave would have been a reasonable accommodation.

88. Because Union Pacific denied Jackson's April 10, 2024 request to use FMLA/CFRA leave and because Union Pacific did not permit him to take additional leave as a reasonable accommodation, Jackson instead had to lay off sick, which resulted in him accumulating 7 attendance points. He would

not have laid off sick had Union Pacific not wrongly denied his FMLA/CFRA leave request or had Union Pacific accommodated him by granting him additional leave.

89. Jackson again complained to Union Pacific that it had miscalculated his FMLA/CFRA leave entitlement and usage and wrongfully denied his leave request. Dooley contacted Jackson, this time (falsely) telling Jackson that Union Pacific had properly calculated Jackson's FMLA/CFRA leave entitlement and usage. Dooley sent Jackson a copy of his FMLA Bank on April 12, 2024. That document contained material errors, including counting Jackson as taking 8.3 hours of FMLA/CFRA leave *twice* on April 6, 2024.

90. No longer able to use FMLA/CFRA leave and concerned that he would accumulate attendance points that would subject him to discipline and dismissal if he laid off sick to cover absences for which he would have used FMLA/CFRA leave, Jackson was forced to take an unpaid medical leave of absence beginning on April 12, 2024. He would not have done that had Union Pacific not wrongly denied his FMLA/CFRA leave request or had it reasonably accommodated him by granting him additional leave.

91. Although Jackson's doctor released him to return to work in early May 2024, Union Pacific dragged its feet in returning Jackson to work and in approving his unpaid medical leave of absence. Union Pacific did not permit Jackson to return to work until June 2024 and did not approve his medical leave until after he had returned to work. Had Union Pacific not approved Jackson's medical leave of absence, Union Pacific would have treated his leave as unexcused, leading to discipline for Jackson.

92. Because Jackson was out of work on the unpaid medical leave of absence for nearly two months from April to June 2024, he lost significant pay and hours on the job. Had Union Pacific permitted Jackson to take the intermittent FMLA/CFRA leave he was entitled to or had Union Pacific permitted

him to take similar leave as a reasonable accommodation, he would not have taken the unpaid medical leave of absence. Jackson therefore would have worked more hours and earned more pay had Union Pacific permitted him to take the intermittent FMLA/CFRA leave he was entitled to or had Union Pacific permitted him to take similar leave as a reasonable accommodation.

93. Because Union Pacific had (falsely) determined that Jackson had exhausted his FMLA/CFRA leave, Jackson was no longer permitted to take such leave upon returning to work in June 2024. That left Jackson with three bad options: (1) mark off sick, which would mean accumulating attendance points and risking discipline, (2) take another extended unpaid medical leave of absence, or (3) work and suffer when he would have otherwise taken FMLA/CFRA leave.

94. Union Pacific's violations of the FMLA, FEHA, and CFRA caused Jackson to suffer mental, emotional, and physical distress, as well as financial hardship.

95. Jackson was injured while working for Union Pacific in September 2024. He has been on medical leave since then. He intends to return to his position at Union Pacific and to again use CFRA/FMLA/FEHA leave once eligible to do so.

**JACKSON FILES COMPLAINT WITH THE CALIFORNIA CIVIL RIGHTS DEPARTMENT AND RECEIVES RIGHT TO SUE NOTICE**

96. Jackson filed a complaint with the California Civil Rights Department about Union Pacific's violations of the CFRA and FEHA on February 23, 2026. *See* Gov. Code § 12960. Jackson received a Right to Sue Notice from the Civil Rights Department the same day.

**FIRST CAUSE OF ACTION: FMLA INTERFERENCE**

97. Union Pacific is a covered employer under the FMLA, as it engages in commerce or in an industry affecting commerce and employs more than 50 employees.

98. Jackson was eligible for FMLA leave. He was employed by Union Pacific for at least 12 months, and he worked at least 1,250 hours in each 12-month rolling period relevant to this case. He

worked in an area where Union Pacific employed 50 or more employees within a 75-mile radius. Jackson applied to Union Pacific for intermittent leave under the FMLA, and Union Pacific approved him to take such leave. Jackson's anxiety condition is a serious health condition under the FMLA.

99. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1).

100. Union Pacific violated this provision of the FMLA. Union Pacific interfered with, restrained, and denied the exercise or attempted exercise of the protected rights of Jackson when it miscalculated the FMLA leave he used and was entitled to use, wrongfully declared that he had exhausted the FMLA leave to which he was entitled, refused to reinstate him and delayed reinstating him to his position or a comparable position at the end of his FMLA leave, denied his requests for FMLA leave, and forced him either to work instead of taking the protected leave to which he was entitled or to use a form of leave that he would not have otherwise used. Jackson was prejudiced and injured by these violations.

101. Union Pacific's violations of the FMLA were willful and done with reckless disregard or deliberate disregard for Jackson's rights. As a result, Jackson suffered loss of income and other damages. Jackson is therefore entitled to back pay, lost benefits, interest, monetary losses, liquidated damages, tax relief, attorney's fees and costs, and injunctive and declaratory relief in connection with his claims.

## SECOND CAUSE OF ACTION: CFRA INTERFERENCE

102. Union Pacific is a covered employer under the CFRA, as it has more than 5 employees in California. Jackson was eligible for CFRA leave. He was employed by Union Pacific for at least 12 months, and he worked at least 1,250 hours in each 12-month rolling period relevant to this case. Jackson applied to Union Pacific for intermittent leave under the CFRA, and Union Pacific approved him to take such leave. Jackson's anxiety condition is a serious health condition under the CFRA.

103. The CFRA makes it unlawful for an "employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." Gov. Code § 12945.2(q); *see id.* § 12945.2(a).

104. Union Pacific violated this provision of the CFRA. Union Pacific interfered with, restrained, and denied the exercise or attempted exercise of the protected rights of Jackson when it miscalculated the CFRA leave he used and was entitled to use, wrongfully declared that he had exhausted the CFRA leave to which he was entitled, refused to reinstate him and delayed reinstating him to his position or a comparable position at the end of his CFRA leave, denied his requests for CFRA leave, and forced him either to work instead of taking the protected leave to which he was entitled or to use a form of leave that he would not have otherwise used. Jackson was prejudiced and injured by these violations.

105. Union Pacific's violations of the CFRA were willful and done with reckless disregard or deliberate disregard for Jackson's rights. As a result, Jackson suffered loss of income, emotional distress, and other damages. Jackson is therefore entitled to compensatory and emotional-distress damages, punitive damages, back pay, lost benefits, interest, monetary losses, liquidated damages, tax relief, attorney's fees and costs, and injunctive and declaratory relief in connection with his claims.

## THIRD CAUSE OF ACTION: FEHA FAILURE TO ENGAGE IN AN INTERACTIVE PROCESS AND TO ACCOMMODATE

106. The FEHA requires employers to provide disabled employees with reasonable accommodations. Gov. Code § 12940(a), (m)-(n). The FEHA also require employers to engage in an interactive process to determine an appropriate reasonable accommodation. Gov. Code § 12940(n). Leave from work may be a reasonable accommodation. Cal. Code Regs. Tit. 2, § 11093(e).

107. Union Pacific is a covered employer under the CFRA and FEHA, as it has more than 5 employees in California.

108. "Physical and mental disabilities include, but are not limited to, chronic or episodic conditions such as HIV/AIDS, hepatitis, epilepsy, seizure disorder, diabetes, clinical depression, bipolar disorder, multiple sclerosis, and heart disease." Gov. Code § 12926.1(c).

109. "If an employee has a serious health condition that also constitutes a disability as defined by Government Code section 12926 and cannot return to work at the conclusion of the employee's CFRA leave, the employer has an obligation to engage that employee in an interactive process to determine whether an extension of that leave would constitute a reasonable accommodation under the FEHA." Cal. Code Regs. Tit. 2, § 11093(e).

110. Union Pacific violated these provisions of the CFRA and FEHA.

111. Jackson's anxiety condition is a serious health condition under the CFRA.

112. Jackson's anxiety condition is also a disability under the FEHA.

113. Jackson was a qualified individual with a disability under the FEHA.

114. Jackson was eligible for and took intermittent leave under the CFRA for his anxiety condition. Union Pacific determined that Jackson exhausted the CFRA leave to which he was entitled. When Jackson requested additional CFRA leave, Union Pacific denied those requests. Union Pacific did not engage with Jackson in an interactive process to determine whether permitting him to take additional leave would be a reasonable accommodation. Nor did Union Pacific grant Jackson a reasonable accommodation in the form of additional intermittent leave. Permitting Jackson to take additional leave would have been a reasonable accommodation.

115. Union Pacific's violations of the CFRA and FEHA were willful and done with reckless disregard or deliberate disregard for Jackson's rights. As a result, Jackson suffered loss of income, emotional distress, and other damages. Jackson is therefore entitled to compensatory and emotional-distress damages, punitive damages, loss of income, lost benefits, interest, monetary losses, liquidated

damages, tax relief, attorney's fees and costs, and injunctive and declaratory relief in connection with his claims.

**PRAYER FOR RELIEF**

116. Jackson prays for relief as follows:

A. An order requiring Union Pacific to pay to Jackson an award of compensatory damages; punitive damages; back pay; wages, salary, employment benefits or other compensation denied or lost; actual monetary losses; interest; tax-related relief; and liquidated damages;

B. An order requiring Union Pacific to pay to Jackson an award for costs (including litigation and expert costs), disbursements, interest, tax relief, and attorney's fees;

C. An order enjoining Union Pacific from miscounting Jackson's CFRA and FMLA leave, interfering with or restraining his use of CFRA and FMLA leave, denying him the use of CFRA and FMLA leave, and refusing to reinstate him and delaying reinstating him to his position or to a comparable position at the end of his CFRA and FMLA leave;

D. An order enjoining Union Pacific to engage with Jackson in an interactive process to determine whether permitting Jackson to take additional leave would be a reasonable accommodation under the FEHA;

E. An order enjoining Union Pacific to permit Jackson to take additional leave as a reasonable accommodation;

F. An order declaring Union Pacific's miscounting of Jackson's FMLA/CFRA leave, interference with his FMLA/CFRA leave, denial of his FMLA/CFRA leave requests, and refusal to reinstate him and delay in reinstating him to his position or to a comparable position at the end of his FMLA/CFRA leave to be in violation of the FMLA and CFRA;

G. An order declaring Union Pacific's failure to engage with Jackson in an interactive process, after Union Pacific decided that Jackson had exhausted his CFRA leave, to determine whether granting Jackson additional leave would be a reasonable accommodation, and Union Pacific's failure to permit Jackson to take additional leave as a reasonable accommodation, to be unlawful;

H. An order expunging any discipline and disciplinary points incurred related to the use of CFRA or FMLA leave, or other leave taken that should have been protected CFRA, FMLA, or FEHA leave from Jackson's work records; and

I. Such other relief, including equitable relief, as may be appropriate or that the Court deems just and proper.

COUNSEL FOR PLAINTIFF
ANDRE JACKSON

Date: February 25, 2026

s/ Adam W. Hansen
Adam W. Hansen
adam@apollo-law.com
Colin Reeves
colin@apollo-law.com
APOLLO LAW LLC
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401
Phone: (612) 927-2969

Nicholas D. Thompson
nthompson@caseyjones.law
CASEY JONES LAW
323 Washington Avenue North
Suite 200
Minneapolis, MN 55401
Phone: (757) 477-0991